The next matter is number 23-1794, John Deaton v. Town of Barrington, et al. At this time, would Appellant John Deaton please introduce himself on the record to begin? Good morning. May it please the Court, my name is John Deaton, and I represent myself, although I am admitted to practice law before this Honorable Court. And if I may, Your Honor, reserve two minutes for rebuttal, please. Okay, you may. Your Honors, the ultimate question before the Court today is whether this Court can conclude as a matter of law that no reasonable jury could conclude that probable cause did not exist at the time of my arrest. And I would submit to Your Honors that the only way that this Court could conceivably conclude that is if you ignore the actual testimony of the arresting officers and assume facts not present in this case, because quite honestly, that's what the lower court did in this case. Now, summary judgment was inappropriate because there are massive material facts in dispute. What the judge did was engage in a credibility probable cause determination that hinges on the credibility of the alleged victim. This Court has stated in the Pena v. Children's Place case that judges are instructed that they must not engage in those credibility determinations. And when you weigh the factors, that is for a jury. And finally, I'm going to ask the Court to do what it did in the Cartel case, which is order the Court to reverse, order the Court to abstain, because this case was always a state case, and I'll explain that in a minute. But I said this is summary judgment standard 101. It really is. I was thinking about it last night, and I came up off the top of my head at least 27 material facts in genuine dispute. I don't have time to go over them all, but let me just highlight a couple. When I was in custody is in dispute. When I was arrested is in dispute. But, counsel, didn't the district court assume to your benefit that you were in custody, that you were arrested in custody and therefore arrested the moment that you were handcuffed? Yes, Your Honor. He assumed that. Yes, Your Honor. He didn't decide it, but he said that he will assume. He assumed it for the purposes of the decision. Yes, because I have an unrebutted expert who also says at the time I was handcuffed and placed in the back seat that I was de facto arrested. I was pointing out that the officers are contesting that I was only detained, that I wasn't even in custody, let alone arrested. And whether or not there was a plea deal is contested. Even whether I apologized to these officers, which I did not, is contested. Whether or not Deacus Deforo, the co-arresting officer, who he interviewed and when he interviewed, like the independent witness, Seth Fisher, is also in dispute. Counsel, I think you're right that there are a lot of issues in dispute. Yes. But under the summary judgment standard, it's only material disputes that matter, as you know. So can I just go back to one of the first points you made? It seems to me that one of the arguments you've made on appeal is the officer, the arresting officer here, himself testified that he didn't think he had probable cause until after the investigation of his colleague and that the district court didn't factor that in. Am I correct? Well, it's not quite like that, Your Honor, because he didn't testify that he didn't think he had probable cause. What he testified, what the judge said, was that the officer, a reasonable officer, could have probable cause at the time of my arrest. But that's not what Officer Wyrostek testified to. What he testified to was that he interviewed the alleged victim for one minute. He noticed there was no injuries despite being claimed that I choked this man in front of 150 children. No visible injuries. Less than a minute. Didn't have time to even get an identification and run his name. Had he, he saw that he had a warrant for his arrest for violence. Then he pulls me over, and within one minute, he testified one to two, but in the light most favorable to me, in one minute, I'm handcuffed and put in the back seat. But in that minute, I say to him, he assaulted me, he assaulted his girlfriend, he assaulted his ex-wife. He's on drugs. You can see in his eyes. Please, go look at his eyes. He's on something. I'm a lawyer. I would never choke this man in front of children. I would risk my law license. There are 150 witnesses 100 feet from us. Please, just go ask them. They will tell you I actually walked away from this man, and he attacked me from behind. I explained all those things. And what Officer Wyrostek said was that he was going to wait for his co-arresting officer to do a probable cause investigation. So the point, your honors, is that the judge claimed that Wyrostek made a credibility determination that the alleged victim was more credible than me, but that's not what he did. What he did was admit that an ex-husband claiming that the new boyfriend did something choking him with no visible injuries was not enough for probable cause. Those are objective factors. And we have evidence in this case that explains the subjective objective issue perfectly. And I'll explain it now. We learned in discovery that at the time of my arrest, the Barrington Police Department had an arrest incentive program policy. Officers would be rewarded with time off based on the number of arrests or percentages of arrests that they conducted. Now, if Officer Wyrostek had that in his mind, I'm going to arrest anybody I can. I might get time off. That's subjective motive. That would not destroy probable cause if objectively when he arrested someone, me, if in fact he had probable cause. That's what the Supreme Court and this court has determined to say that subjective motive does not destroy an objective inquiry that establishes probable cause. But here, that's not what happened. Throughout the testimony, Officer Wyrostek even said it didn't matter what Mr. Deaton was going to say. I detained him while my co-arresting officer conducted a probable cause analysis. And then when you look at the record, Officer DeCosteforo admitted that when you look at the prior relationship, ex-husband status, that's an objective factor to consider because of false, potential false accusations. The fact that there were no injuries. And for the record, the judge in lower court committed plain error when he said, well, Wyrostek didn't learn about the known injuries until after he arrested Deaton. It's not true. Wyrostek testified in his one-minute analysis where this man said he was choked by me, noticed that he had not one visible injury to his neck. And then Officer DeCosteforo said he went around and did a 15 to 20-minute investigation, that he interviewed Christine Laramieux, that he talked to Mr. Warner, and that he found this independent witness, Seth Fisher, a coach, that said, yeah, that guy had his hand around his neck or something like that. And that's when they arrested me. Now, as it turns out, Your Honors, I can prove, not by preponderance of the evidence, beyond a reasonable doubt, that that is nonsense. Because he said 10, 15 to 20 minutes, when you look at the time of arrest, the time that they arrived to the scene, until the time I'm brought into the police station, 10 minutes and 22 seconds. You use their objective evidence. 10 minutes and 22 seconds. It destroys it. And the real question here, when you take an ex-husband who's given a statement for less than a minute with no injuries, and the case law recites support that that's very important, and you have all the evidence countering it, could a reasonable jury say, I don't think this officer had probable cause? So, counsel, what do you think is the, I know you think the district court committed many errors, but on this critical question of, you know, again, assuming you were arrested the moment you were handcuffed, and this credibility determination of do I believe the witness enough to arrest, or do I believe you, who's raising credibility issues about the witness, the victim here, what do you think the district court did wrong here? Did the district court not credit your testimony about what you told the arresting officer right before he handcuffed you? Did he, you know, just fail to say that there was enough there to go to a jury to make a credibility determination? What is the precise error for that critical moment right before you're handcuffed that you think the district court got wrong? Great question, Your Honor. Thank you. It's all of the above, but I'll give you some very precise information. The judge in his decision states that Mr. Deaton didn't offer any evidence to Wyrostek that would counter or challenge the demeanor or credibility evidence of the alleged victim, and that is absolutely not true. And we have it in the record. I said to him, he's on drugs. Please go look at his eyes. I said that he has been so violent lately that there's probably a warrant for his arrest, and I was right. I literally said to him, this guy is out of control. He assaulted his girlfriend. He assaulted his ex-wife. He assaulted me. I'm walking away. And I also said when the alleged suspect says to the officer, and we have case law that supports this, there are 100 witnesses 100 feet from us. Please, officer, please, just go ask them what happened. I walked away. I literally started walking away from the man. They'll tell you that. And what's interesting is that their so-called independent witness, Seth Fisher, when he was deposed, guess what he testified to? And we have it in the record. He said, that's right. I saw Mr. Deaton walk away. Walk away from the man, and the man came from behind, slapped Mr. Deaton on the back, turning him around. They would have learned that. And this court, this court in PETA, in town of Yarmouth, says that the officer is not allowed to ignore evidence that dissipates probable cause. That's from this court. And I think absolutely when you look at the record, Your Honors, you will conclude that a reasonable jury could absolutely conclude that probable cause did not exist. But here, the issue of probable cause, that's not necessarily goes to the jury. Isn't that a legal issue? It's only a legal issue if there's no material dispute. It's facts, Your Honor. In the Bolton case, this court has said that it goes to a judge only if there are not fact, material facts in dispute. And almost every fact in this case is in dispute, all of them being material. And so, in fact, the jury gets instructed, there is a jury instruction on probable cause, as Your Honor knows, that goes to the jury, and the jury is to decide. And the Fontaine case cited by the defense, actually a jury disagreed with the officer who relied on allegedly credible information and ruled against him that he did not have probable cause. So this is clearly an issue for the jury. Okay. And Counsel, you're suggesting in your brief that the investigation, you know, should have, there should have been further investigation. But what requires that further investigation, you know, because again, probable cause is a very, very low threshold. Well, one, Your Honor, we have an unbudded expert report that says this was a domestic situation. And if you go to the Barrington Police Manual, it says that it is the duty of the officers to determine the primary aggressor. It's not just a person saying, yeah, this guy choked me. That's not enough. It's never been enough. And we cite the lack of injuries when there's a relationship. And even Judge Smith, the district court, said, he cited a case that said the number one factor for questioning the credibility of the alleged victim is if there's a known relationship between the parties. Then the judge said, well, there's no per se rule that says that it's per se unreliable. But this court, in the submittal case that I cited, states a lack of injuries does cause you to question the credibility. And then when you add all those other factors that I went over, Your Honor, it's clearly an issue for the jury. Okay. Let's hear from counsel for the town of Barrington. Good morning, Your Honors. Mark DeSisto for the defendants' appellee. And I'm with Ms. Sarah Boucher, who's my colleague and participated heavily in the brief writing. I want to make four points to Your Honors, if I can. I think we have to start with the position that the probable cause analysis is a legal determination by the judge when there are no material facts in dispute. And it's an objective standard. Our United States Supreme Court has said that the actual motive or thought process of the officer is not plumbed. I think they use that word in this analysis. And that's in Wren v. United States. And our First Circuit, Bolton, says that. So we start with that fundamental issue here. And here, what the lower court determined is at the time of the arrest, at the time that he was put in handcuffs, the officer had one uncontested fact. It's not contested by my colleague, Mr. Deaton, that the purported victim had said, he placed his hands on my throat. And there he goes. He pointed them out to him. And so if we take just that, is that enough to establish probable cause? And we have a myriad, a number of cases that say it is. And I won't talk about it. Let me ask you, for the purpose of a prologue, let's assume that it wouldn't ordinarily establish a prologue. Counsel Deaton has mentioned that there's a manual for the town of Barrington that the officers have to do X, Y, Z, you know, for domestic disputes. Doesn't that heighten the level of what is probable cause, at least for that police department? Not according to a Fourth Amendment violation. So what we have to look is at the constitutional violation. If the department requires other things, that doesn't change the Fourth Amendment. It doesn't change the constitutional analysis for the Fourth Amendment, respectfully, Your Honor. And I think one has to go back to whether or not an officer has a duty to investigate once that officer hears information that it's not unreasonable to accept. But, Counsel, I think what Mr. Deaton is arguing is that what the district court found, there's no duty to investigate. But what Mr. Deaton is arguing is he didn't need to investigate further because he, himself, told the arresting officer all the reasons to doubt the victim's credibility. And so if we're looking just at what the officer knew at the time he handcuffed him, that even though it's an objective standard, ultimately, there is enough to go to a jury of whether he had undermined the credibility of the victim. So how do you respond to that? And I guess I'm just wondering, what I didn't see in the record, and if you can point me to it, I would appreciate it, is did the district court fully credit as it needed to on summary judgment that all of Mr. Deaton's allegations about what he told the arresting officer in that minute were true? Well, I don't see that in the record either because I don't think you need that. I think what Judge Smith said in his decision is even if the officer had received that information, what is it that that officer would have done? I think he said if he had received that, what is he supposed to do? This gets to a policy issue, I think, which underlines all of these cases that say, once you receive information, once an officer receives information from a purported victim that is credible or seems credible, you have to stop there. Because what would an officer do then? Make a determination of credibility at that point? Because then we'd be here determining whether or not the officer went far enough in his investigation or her investigation. And I hearken back to Baker v. McCullough. I don't think it's a question of whether he went far enough because he has the information. And so the officer has to make a determination based on the information he has, whether there's probable cause or not. And so when the credibility has been undermined and he just already has that information up and he needed to go further to seek it out, why isn't that a jury question? First of all, I don't think probable cause is a jury question anyway. What that would mean is we would not prevail. You think it's never, ever a jury question? I think probable cause isn't. I think if we didn't prevail on probable cause, we'd go to trial on the underlying issue of whether or not Mr. Deaton assaulted. So Judge Smith got it correctly then, finding no probable cause. Judge Smith got it done correctly under your position, right? Yes, I think so. And let me also ask you something. Here there's two probable cause prongs. There's the probable cause the police officer, you know, investigates and arrests. And then if he arrests, Mr. Deaton has to go to court at some point if the charge is going to be pressed. And then a court can also review if, you know, there's probable cause to continue charging. But here we're just dealing with the arrest per se. Right. That's correct. Yeah. So I think that's a legal question, Your Honor. And, you know, I think I'm going to combine both your questions. I think if you look at all of the cases that have dealt with this particular issue, and I'm going to go to Acosta versus Middletown Forest versus Pawtucket, Holder versus town of Sandown, they're virtually identical to this where there are sets of facts and there are particularly Holder where there's, you know, a husband and wife situation. They're going through a bitter divorce and these things are said. And that's why I think you have to get to the fundamental of is it unreasonable to accept the victim's statement? And here Judge Smith determined that it wasn't unreasonable and that the plaintiff hasn't provided anything in the record to show that when the officer spoke to the purported victim that there was anything in his demeanor that would suggest that he was not credible. And so, you know, when you have these situations where there's a situation where two people are going at it, sure people are going to say one thing about someone and you'll get it from the other side. And I think you have to go back to whether or not the fact that this court has said in a number of cases that the statement of a purported victim is generally enough. If I can get one more policy statement in here. There's a case, Illinois v. Gates, which I know you're all familiar with. It's a U.S. Supreme Court case. It has nothing to do with this. But it talks about false information on a warrant and it... I think you're referring to Frank's. Well, this goes a little before that. But what it says is that ordinarily you have to assume that a victim or someone who gives statements for a warrant, but I'm going to analogize this to this, that they wouldn't do that because the victim or the person who gives that statement is subject to criminal penalties or civil penalties. And so, you know, it seems to me in all of these cases, and including this one, that the anger and the frustration is misdirected because it should be at the person who gave the statement that now Mr. Deaton says is not true. And I think there's a safeguard in the system there. But, counsel, the cases that you're citing, including Forrest, I mean, they're quite clear that even when the police officer relies on the victim's complaint, there's still an analysis on top of that whether there was any evidence that it was unreasonable for the officer to do that. So, again, Mr. Deaton is arguing there was evidence here in the record. So, you know, how do you respond to that? Because he says he gave lots of information to the arresting officer to make it unreasonable for him to rely on the victim's statement. But the officer said that I relied on the statement of the victim, the purported victim. And if you look at the case law, you know I'm very familiar with Acosta and Forrest. So let me tell you, in Acosta, there were statements that, you know, they stole two jackets and someone said I saw that. And yet the person who was accused said here are the receipts and look at the jackets. They're used and so forth. This court determined that the witness's statement was enough. In Forrest, you have a student who was intellectually disabled, they called them special needs back then, in a classroom who alleges that Mr. Forrest, the teacher, molested that person. And there was evidence such as this. And this court said we have to rely on the statement of the purported victim. But that seems to eliminate entirely the reasonableness analysis. I don't think it does, Your Honor. And I'll tell you, I think it sends us down the wrong path. If in every single case this court has to look at what a credibility issue between what the defendant in the criminal case, the person accused, said I said this to this person, I did this to this person, and these were all of the issues, instead of focusing on whether or not it was unreasonable to take the victim's statement. And here Judge Smith said I find that the officer could have found that this Mr. Warner and his statements to Officer Wyrostek, I think Wyrostek could have found him credible. Probable cause is such a low bar, this court has said that, that I think that's enough. And I think the decision of the court is well-reasoned in that regard. Counsel, if the judge in this analysis, the district court judge had said I don't find probable cause, I take it then the question could go to the jury about whether the officer acted reasonably nevertheless, even though there was no probable cause finding. That's true. Is the contrary true, that once the judge in the summary judgment proceedings determines that there was probable cause, that itself includes a reasonableness consideration? Does that mean it's game over every time? It does. I think it does. I think it has to. What's your best case for that, if you have one? That if the court finds that there's probable cause, that vitiates. Well, I think if there's probable cause, then the now plaintiff doesn't meet the standard to get to the jury. I don't think I'm getting your question. It's okay. So do we need to look at the pattern jury instruction on this? Do you know? I don't know. I mean, do we need to look at it for purposes of potential revision, if we are allowing juries to determine whether there was probable cause? Okay. This is an interesting question. I don't recall that we do allow juries to visit probable cause because it seems to me. You might suggest that. I mean, I thought I heard that we do. Yeah. But you don't necessarily agree that we even do. I don't. You know, I tend to do a lot of these cases. I think once you get, once a judge determines there's no probable, excuse me, that the case can go to a jury, the jury looks at the underlying issue, and that is whether or not there was an assault or whether or not all of the things, the offenses that the plaintiff was accused of. If I could just say one more thing. You know, the plaintiff now was accused of assault, battery, and disorderly conduct. You know, I've heard over and over again there were no marks on the throat. Certainly for an assault, you don't need that. You really don't need it for a battery either. It's an unconsensual touching, and you certainly don't need it for disorderly conduct. And at least at this point, until the Supreme Court looks at it, any one of those is enough. Counsel, can I actually ask you a question about the abstention issue? Sure. Can you just give us your position on whether any of the federal constitutional claims in this case are premised on an unsettled question of state law? Yeah, the answer is no. The lower court decided that under 1273 in Rhode Island, one has to either have reasonable cause to believe a crime was committed and that the person is a flight risk. Those two issues don't determine whether those don't fall within a Fourth Amendment analysis. And so here, I think Judge Smith indicated that, that the determination of whether or not 1273 applies really doesn't come within the Constitution. And the United States Supreme Court has never determined, never ruled on whether or not an officer has to see an offense, a misdemeanor offense to arrest. And this court in, I have it here, Vargas Bedillo has allowed a, has not sanctioned, but has allowed an arrest when an officer didn't see a misdemeanor offense. So you think the state and federal issues are just completely independent? They are. Here. Okay. Thank you, counsel. Two minutes rebuttal, Mr. Deaton. It's almost as though it's like the bizarro world because my brother just said the officer did not say that the officer relied on the victim's statement. That's not true. They can write it 15 times in their brief. It's not true. Why, Rostick testified that after he heard the two stories, he let his partner decide the probable cause investigation. He never made a credibility determination that the victim was more credible. It's the opposite. And that the record is clear of that. To answer your honor earlier, page 13 of the district court's decision, quote, plaintiff has alleged nothing about Warner's demeanor when reporting the incident or details of his account that would undermine his credibility. One hundred percent wrong. That is plain error on its face. Now, the Fontaine case, as far as this jury instruction, this court and Fontaine cited by them allowed the jury to make the probable cause determination even though the officer was relying on an alleged credible complaint. It goes to the jury. There's a jury instruction for the jury when there's disputed material facts. In the Pena v. Children's Place case, this court said judges must not engage in the credibility determination. And my brother just said that Judge Smith said a reasonable officer could determine that Warner was more credible. Well, hypothetically, I'm not suggesting that hypothetically it couldn't happen. But with these facts and to answer the question earlier, this is what was known to answer your honor. There were no injuries. It was a call saying that my girlfriend, my ex-wife's boyfriend did this to me. Conflicting stories. No ID of Warner. He didn't have time to even ID him or run his record. I said that I lived a mile away. I was a lawyer with an office. He's on drugs. He assaulted several people. I'm walking away. There are many witnesses available. He learned that there was no warrant or negative activity on my name whatsoever. All of those things and this officer did something that was not unreasonable. He said it's not enough. I don't have probable cause. Objective. Not subjective. Objective on those facts I just said. I don't have probable cause. Let me wait for my partner to investigate. That's the record. And on that record, it demands reversal. And if I could finally make one comment. I'm sorry, your honor. Indulge me, please. My brother's absolutely wrong. The 1273 is a two-pronged test. That first prong is reasonable cause. That's probable cause. The second prong is reasonable grounds. You don't arrest me unless you can articulate reasonable grounds that I'm a risk to someone, risk to myself, or risk to property. But that first prong is reasonable cause. That's the functional equivalent of probable cause. You cannot separate that. And imagine sending this to state court saying where the defense is going to argue, your honor, the jury should be told a federal judge found probable cause as a matter of law and handcuffed the state claim when it's unsettled. It needs to go to the state court. That's where it was meant to be. I disavowed federal claims. I ended up in federal court because of a Scribner's error. It's all part of the record. Thank you for your time. Thank you very much. Thank you, counsel. That concludes the hearing. Court is adjourned until tomorrow.